IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| DEANNA WILLIS,<br><br>**Plaintiff,**<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>**Acting Commissioner of Social Security,**<br><br>**Defendant.** | CIVIL ACTION NO.: 1:23-CV-19<br>(JUDGE KLEEH) |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

This case arises from the denial of Plaintiff Deanna Willis' ("Plaintiff") Title II application for disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB <u>does contain</u> legal error and is <u>not</u> fully supported by substantial evidence, the undersigned **REPORTS** and **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 6] by which she requests that the case be reversed and remanded, be **GRANTED in part** and Defendant's Motion for Summary Judgment [ECF No. 9] be **DENIED in part**.

---

[1] Kilolo Kijakazi may be automatically substituted in place of former commissioner Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).

1

## II.     PROCEDURAL HISTORY

On October 5, 2020, Plaintiff filed her application under the Social Security Act for DIB, alleging disability that began on July 1, 2020. (R. 12). Plaintiff's date last insured ("DLI") is December 31, 2024; to receive DIB, then, Plaintiff must show that she was disabled on or before that date. (R. 108). This claim was initially denied on May 24, 2021 (R. 12) and denied again upon reconsideration on January 6, 2022. Id. On January 20, 2022, Plaintiff made a request for a hearing, which was held before the ALJ on August 1, 2022 by telephone. Id. Plaintiff, represented by counsel, Tariq Khan, appeared via teleconference and testified. (R. 33). Eric Dennison, an impartial vocational expert ("VE"), also appeared via teleconference and testified at the hearing. Id. On October 11, 2022, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Act. (R. 12-25).

Plaintiff filed a request for review of hearing decision dated November 15, 2022. (R. 195-197). Subsequently, on December 23, 2022, the Appeals Council issued a Notice denying Plaintiff's request for review. (R. 1-3). Plaintiff filed her Complaint with this Court on February 13, 2022. [ECF No. 1]. The Commissioner filed the Administrative Record on April 12, 2023. [ECF No. 4]. Plaintiff filed a Motion for Summary Judgment and brief in support, thereof, on May 16, 2023. [ECF Nos. 6, 7]. Defendant filed a Motion for Summary Judgment and brief in support, thereof, on June 14, 2023. [ECF Nos. 9, 10]. Plaintiff filed a reply in opposition of Defendant's summary judgment motion on June 20, 2023. [ECF No. 12]. After the matter was fully briefed, the undersigned conducted a hearing on July 21, 2023 to receive argument from counsel.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having

2

reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III. BACKGROUND

#### A. Personal History

Plaintiff's date of birth is December 27, 1969, and she was 50 years old at the onset date of alleged disability, July 1, 2020 (R. 12). At the time of the alleged onset date, Plaintiff was a person closely approaching "advanced age" (age 50-54) under the Regulations. (R. 79); See 20 C.F.R. § 1563(d). Plaintiff is 4 feet, 11 inches tall and weighs approximately 185 pounds. (R. 49). At the time of the hearing before the ALJ, Plaintiff was married and lived in her home with her spouse and daughter. (R. 38). And at the time of the ALJ's hearing, Plaintiff's daughter was 23 and visually impaired. Id. Plaintiff's husband worked as an industrial mechanic. (R. 39).

Plaintiff worked two part-time food industry jobs at Cracker Barrel and then at Patty's Pub, after her alleged onset date of July 1, 2020. (R. at 39-40). (R. 40). Plaintiff claimed that she was on her feet all of the time at both jobs because she served as a host. Id.

Before the alleged onset date of July 1, 2020, Plaintiff worked as a braille coder, teacher aide, and substitute teacher. The most recent job Plaintiff had was as a braille coder at the West Virginia Schools for the Deaf and the Blind for a period of two years. Prior to her work as a braille coder, Plaintiff worked as a teacher aide for a period of at least five years. Prior to her work as a teacher aide, Plaintiff worked as a substitute teacher.

The jobs which the ALJ counted as past work were (1) braille coder, (2) teacher aide, and (3) substitute teacher. (R. 24).

Before the ALJ, Plaintiff alleged that she is limited in her ability to work due to: pancreatic insufficiency, liver disorder, obesity, status post cholecystectomy, gastroesophageal reflux

3

disorder (GERD), headaches, hyperlipidemia, ichthyosis, angular cheilitis, history of gastroparesis, history of anal fissure, diverticulosis, hiatal hernia, meralgia paresthetica of the lower extremities, prediabetes, a renal lesion, anxiety and depression. [ECF No. 7, at 2].

### B. Medical History

In accordance with the Court's Order Directing Filing of Briefs [ECF No. 5], the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. The undersigned notes that Defendants disagreed with specific stipulated facts as proposed by Plaintiff. Accordingly, the undersigned relies upon those stipulated facts that were agreed upon by both parties throughout this report and recommendation. See Pl's Brief Supp. Mot. Summ. J., [ECF No. 7, at 2]; Def.'s Brief Supp. Mot. Summ. J, [ECF No. 10, at 3].

### IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Commissioner uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that

> meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920. If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.     ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, from July 1, 2020, the alleged onset date, Plaintiff did not engage in any substantial gainful activity despite having worked after the above-noted date. (R. 14). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: pancreatic insufficiency, liver disorder, and obesity. (R. 15). At step three, the ALJ found that Plaintiff "does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments." (R. 18). At step four, the ALJ determined the Plaintiff's RFC to be as follows:

> to perform light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently, standing and/or walking 6 hours and sitting 6 hours in an 8-hour work-day. The claimant is further limited to: frequently climbing, balancing, stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to hazards and vibrations.

(R. 19). Finally, at step five, the ALJ determined that Plaintiff is capable of performing past relevant work (1) as a braille coder, (2) as a teacher, physically impaired, and (3) teacher aide II

5

(R. 24). the ALJ is silent on a determination as to whether Plaintiff is able to perform other jobs in the national economy considering her residential functional capacity, age, education, and work experience.

## VI.  DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. See generally Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

### B. Contention of the Parties

Plaintiff contends that the ALJ's decision failed to (1) explain the basis for the non-severity finding related to the Plaintiff's gastrointestinal impairments and (2) consider medical opinions as to the severity of the Plaintiff's mental impairments. First, Plaintiff argues that the ALJ erred by failing to include limitations related to Plaintiff's gastrointestinal impairments in the RFC finding. Further, Plaintiff argues the ALJ did not explain why they were excluded from the RFC. As for the mental limitations, Plaintiff argues, the ALJ violated the *de minimis* standard by failing to consider the medical opinions from mental health specialists and find that Plaintiff's mental impairments were severe. All taken together, Plaintiff would have the Court reverse and remand the matter for an award to be entered for Plaintiff or for further administrative proceedings.

Defendant argues, on the other hand, that the ALJ's decision is supported by substantial evidence. As to the gastrointestinal impairments, Defendant argues that the ALJ did not consider Plaintiff's gastrointestinal limitations in the RFC because Plaintiff's symptoms of diarrhea and abdominal pain were essentially resolved and significantly improved. Further, despite Plaintiff's complaints of such impairments, Plaintiff was capable of performing daily activities such as doing housework and caring for her farm animals and visually-impaired child.

As to the mental limitations, Defendant argues that substantial evidence also supports the ALJ's finding that Plaintiff's mental impairments were not severe. Not only did Plaintiff neglect to claim that she suffered from mental impairments including memory, concentration, and completing tasks, medical opinions provided that Plaintiff had no to mild mental functioning limitations.

C. Analysis of the Administrative Law Judge's Decision

As is frequently the case in the review of these matters, the main substantive issue is whether the ALJ's review of the medical records is sufficient enough to receive deference under

the "substantial evidence," standard, or whether the ALJ's review was so deficient as to merit remand. In particular, the issues are narrowed to (1) whether the ALJ sufficiently accounted for Plaintiff's gastrointestinal impairments in crafting the RFC and concluding that she can perform past relevant work, and sufficiently accounted for Plaintiff's <u>subjective</u> complaints, and (2) whether the ALJ properly reviewed the record regarding Plaintiff's limitations owing to mental impairments. Here, the undersigned **FINDS** that substantial evidence does <u>not</u> fully support the ALJ's review, such that the decision below is <u>not</u> entitled to deference.

*1. The ALJ's analysis of Plaintiff's non-severe impairments (or limitations).*

The record demonstrates – and the ALJ acknowledged – that Plaintiff has certain gastrointestinal limitations. The issue with the ALJ's findings and conclusions about those limitations, though, is that the ALJ did not properly/fully explain the non-severity factual findings of certain impairments. This leaves the Court to question the unequal level of support given to justify why certain limitations were deemed non-severe and thus not included in the RFC.

Despite the ALJ finding that Plaintiff's severe impairments include pancreatic insufficiency, and a liver disorder, Plaintiff argues that the "…with absolutely no explanation or citation to evidence," ALJ determined non-severity findings for GERD, esophageal disorder, history of gastroparesis, history of anal fissure, and diverticulosis. [ECF No. 7, at 3]. While the ALJ's decision seems to provide some citations and explanations as to why some of the above-noted impairments were deemed non-severe, the ALJ does not support all of the non-severe findings with substantial evidence.

Under step two of the decision, the ALJ provided explanations for impairments determined to be non-severe. First, the ALJ acknowledged that Plaintiff has a history of anal fissures and diverticulitis. (R. at 15)(citing Ex. 2F/4). The ALJ cited to an abdominal imaging in 2020 that

8

showed scattered colonic diverticula and a small hernia, but no evidence of acute diverticulitis. (Ex. 2F/9). An examination from April 2021 found no hernia. (Ex. 11F/7). The ALJ determined the impairments "caused only mild symptoms and limitations and are not severe impairments." (R. at 15). Second, the ALJ stated that "claimant's GERD was stable on medication…the undersigned finds these impairments are well-controlled with treatment and are not severe impairments." (R. 15)(citing Exs. 3F/6; 11F/7-8; 20F/18). Furthermore, the ALJ acknowledged that Plaintiff was diagnosed with gastroparesis (Ex. 19F/4). The ALJ ultimately determined that the impairment was "only mild and transient symptoms and limitations and are not severe impairments." (R. at 16).

As Plaintiff rightfully argues, the ALJ's finding that Plaintiff's headaches were non-severe was supported by a "thorough analysis" of Plaintiff's impairments related to migraine headaches whereas the above-noted impairments were merely supported with a line or few of evidence if at all. [ECF No. 12]. For example, the ALJ provides that esophageal disorder is an impairment that Plaintiff alleges. (R. 15). However, the ALJ does not make any subsequent mention of this particular impairment within the decision. Additionally, the ALJ determined Plaintiff's gastroparesis was not severe. (R. 16) The ALJ simply provided that "Gastroparesis was diagnosed" as support for the finding. Id. The evidence seems to be a mere scintilla thus not meeting the low standard of substantial evidence. In other words, the evidence provided to justify these findings do not allow a reasonable mind to accept the evidence to support the conclusions.

The undersigned agrees with Plaintiff's contention that the ALJ's failure to adequately explain the severity findings of all impairments "rendered her RFC finding incomplete and requires remand for further proceedings in this case." [ECF No. 12 at 3].

Therefore, in the undersigned's review, the ALJ failed to properly explain and include all of Plaintiff's the gastrointestinal limitations in the RFC. Accordingly, the undersigned **FINDS** that

9

the ALJ's conclusions should not stand and **RECOMMENDS** that the matter be remanded for further evaluation, incorporating the full breadth of Plaintiff's gastrointestinal limitations.

*2. The ALJ's evaluation of Plaintiff's gastrointestinal limitations.*

Plaintiff contests the ALJ's failed to include Plaintiff's "well-documented" gastrointestinal impairments in the residual functional capacity. Under step four, the ALJ found that Plaintiff has the RFC to perform light work. (R. 19). The ALJ stated that "claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence…" (R. 20). Specifically, the ALJ cited to a treatment note from October 1, 2020 that stated Plaintiff's chronic diarrhea had "essentially resolved". (R. at 20)(citing Ex. 2F/4). Plaintiff argues that the ALJ "failed to note that this comment was made while Ms. Willis was at the emergency room being treated for 'abdominal pain.'" [ECF No. 12 at 3]. The ALJ also cited to a note from Plaintiff's gastroenterologist, Dr. Gorman Reynolds, that stated "significant improvement" in her abdominal pain. (R. 20)(citing Ex. 24F/67). Plaintiff argues that the ALJ utilized the above-noted medical records to reject the inclusion of such limitations in the RFC despite "medical evidence [that] directly contradicts" the evidence. [ECF No. 12 at 4].

On the other hand, Defendant argues that the ALJ explained the RFC finding by properly evaluating Dr. Reynold's opinion. Notably, Defendant states that Dr. Reynolds' treatment note that Plaintiff had demonstrated "significant improvement" did not support Dr. Reynolds' functional work limitations – namely a "proximity to bathroom." [ECF No. 10 at 10]. Further, Defendant argues that the ALJ discussed how "normal abdominal exams," "improvement with medication," and "other opinions and prior administrative medical findings supports her evaluation of Dr. Reynolds' opinion." [ECF No. 10 at 10-11].

10

Despite Plaintiff's allegations that the ALJ misinterpreted Dr. Reynolds' opinion, the undersigned agrees with Defendant in that a reasonable mind might accept the evidence as adequate to support the ALJ's finding that Dr. Reynolds' opinion is inconsistent to a degree. Therefore, in the undersigned's review, the ALJ properly explained the RFC finding with regards to the merits of Dr. Reynold's opinion. Accordingly, the undersigned **FINDS** that the ALJ's conclusions should stand and that the matter should not be remanded for further evaluation on the issue of the adopting Dr. Reynold's opinion in its entirety.

3. *The ALJ's evaluation of medical opinions in relation to Plaintiff's mental impairments.*

Plaintiff contends that the record contains opinions from three mental health specialists and two state agency psychologists that concluded Plaintiff's mental impairments are severe. However, Plaintiff argues that the ALJ rejected limitations offered by the specialists and relied upon her own lay judgment. [ECF No. 7 at 11]. Further, Plaintiff acknowledges that the ALJ found that Plaintiff had "mild limitations in concentration, persistence, or pace," but such findings were not accounted for in the RFC. [ECF No. 7 at 9].

Defendant found that Plaintiff's mental limitations were "so slight that they would not affect her mental ability to perform basic work activities with the opinion of the provider who treated Plaintiff's depression and anxiety, psychological testing, the lack of specialized mental health treatment, and Plaintiff's consistently normal mental status, subjective allegations, and daily activities." [ECF No. 10 at 11].

As a foundational matter, in Defendant's own regulations, all of a claimant's limitations must be evaluated. This includes a claimant's mental limitations, regardless of whether it is the sole impairment or one of multiple impairments:

> (1) Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and <u>mental limitations</u> that affect what

11

> you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record. (See § 404.1546.)
>
> (2) If you have more than one impairment. <u>We will consider **all** of your medically determinable impairments of which we are aware</u> . . .
>
> …
>
> (4) What we will consider in assessing residual functional capacity. When we assess your residual functional capacity, we will consider your ability to meet the physical, <u>mental</u>, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section.

20 C.F.R. § 404.1545(a) (emphases added).

While discussing step two, the ALJ evaluated the persuasiveness of several opinions from mental health specialists. Namely, the ALJ did not find Dr. Tracy Cosner-Sheperd's opinion persuasive because the opinion was based on a "one-time examination." (R. 17-18). The ALJ found the opinions of State Agency experts Joseph Richard, Ed.D. and Joseph Shaver, Ed.D. were also not persuasive because the limitations were not supported by Plaintiff's own reporting and were not consistent with other evidence in the record. (R. 18).

However, when providing a listing of medical opinions and prior administrative medical findings the ALJ has "full considered" under step four, the ALJ only mentions, Dr. Rhonda Cottino, PA-C, Plaintiff's treating provider. Dr. Cottino concluded that "impairments would not significantly interfere with her ability to do sustained tasks requiring hourly breaks…" (R. 22). The ALJ fails to mention the opinions of the above-noted mental health specialists who Plaintiff contends found severe mental limitations. Further, Plaintiff contends that the ALJ found that Plaintiff has a mild limitation in the functional area of "concentrating, persisting or maintaining pace" (R. 17) but failed to account for this limitation in the RFC. [ECF No. 7 at 9]. The inquiry simply is whether the ALJ properly accounted for and evaluated those limitations. The undersigned

concludes that the ALJ did <u>not</u>. As Plaintiff notes, the absence of a *full* discussion about the mental limitations in the RFC leaves the Court to guess as to why the limitations provided by the mental health specialists were excluded.

In the context of a Social Security case, the Fourth Circuit has spoken of the need for a well-rounded ALJ decision to afford meaningful review. <u>Patterson v. Comm'r of Soc. Sec. Admin.</u>, 846 F.3d 656, 662 (4th Cir. 2017). "Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error." <u>Id</u>. at 658. In the instant matter, with the gap between Plaintiff's established mental limitations and the RFC conducted, the Court cannot conduct a proper substantive review of the ALJ's decision.

In sum, in the undersigned's review, the ALJ improperly excluded Plaintiff's mental limitations in the RFC. Accordingly, the undersigned **FINDS** that the ALJ's conclusions should <u>not</u> stand and that the matter should be remanded for further evaluation, incorporating the full breadth of Plaintiff's mental limitations.

## VII. <u>RECOMMENDATION</u>

For the reasons herein stated, the undersigned **FINDS** that the Commissioner's decision denying Plaintiff's claim for DIB <u>does</u> contain legal error and is <u>not</u> supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 6] be **GRANTED in part**, Defendant's Motion for Summary Judgment [ECF No. 9] be **DENIED in part**, and the decision of the Commissioner be **REMANDED** for further development and review consistent with the opinion of the presiding District Judge.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections**

13

**identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 11th day of December, 2023.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE